IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| BONITA BARTLES and STEPHEN COBB, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>EARTH FARE, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 3:14-CV-00015-CDL<br>)<br>)<br>)<br>) |

**MOTION FOR FINAL APPROVAL OF UNOPPOSED ATTORNEY'S FEES, COSTS, AND SERVICE PAYMENTS FROM CLASS AND COLLECTIVE ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW**

Plaintiffs Bonita Bartles and Stephen Cobb ("Plaintiffs"), by and through their counsel, and expressly without opposition to the amounts requested by Defendant Earth Fare, Inc. ("Earth Fare" or the "Company") (collectively referred to herein as the "Parties"), hereby move the Court for approval of the attorney's fees, costs, and incentive awards to be paid by the class and collective action settlement in this case ("Settlement") as set forth in Settlement Agreement, Release, and Waiver ("Settlement Agreement") [Doc. 38-1] for which the Court granted preliminary approval by Order of July 29, 2015 ("Preliminary Approval Order") [Doc. 40].

The Court's Preliminary Approval Order:

1) authorized the filing of Plaintiffs' Second Amended Complaint ("Amended Complaint") for the purpose of pleading the state law class claims to be covered by the settlement;

2) certified the proposed collective action pursuant to Section 16(b) of the FLSA and state law class pursuant to Rule 23 of the Federal Rules of Civil Procedure, for settlement purposes only, as described in the Amended Complaint and below;

3) granted preliminary approval of the proposed Settlement;

1

4) appointed Head Law Firm, LLC as Class Counsel;

5) directed distribution of the proposed Notice of Settlement of Class and Collective Action Lawsuit and Fairness Hearing ("Notice");

6) set the final fairness hearing before this Court for November 19, 2015 ("final fairness hearing"), a date that was more than one-hundred (100) days from the date of the motion for preliminary approval; and

7) ordered Plaintiffs to file a motion for approval of attorney's fees, costs, and incentive awards to be paid out of the settlement by no later than ten (10) days before the final fairness hearing.[1]

In support of their motion for approval of unopposed attorney's fees, costs, and service awards to be paid out of the settlement, Plaintiffs submit this incorporated memorandum of law.

## I.     Introduction

This overtime case alleged that Earth Fare, a grocery store chain, misclassified its salary-paid Department Managers as exempt from overtime pay requirements until October 21, 2012, when it reclassified the position on a going forward basis to hourly-paid overtime-eligible, but did not issue back wage or liquidated damages payments to affected employees. The parties reached a settlement that allowed all[2] affected Department Managers who worked at any time during the period from the starting effective date of the parties' tolling agreement (April 16, 2011) through the reclassification date (October 21, 2012) (the "Covered Positions" or "putative class members") to claim a pro rata share of the settlement fund for back wages and liquidated damages.

---

[1] The parties agreed that this motion shall be filed ten (10) days before the final fairness hearing, in order to give class members the opportunity to consider the information contained in this motion prior to the final fairness hearing. The Court does not need to take any action on this motion until at or after the final fairness hearing set for November 19, 2015.

[2] Excluded from the settlement were two Department Managers who had previously filed and settled their individual FLSA overtime claims for work in a Covered Position by court-approved settlements in separate litigation.

The settlement was reached after several months of arms-length and good faith negotiations, including a full-day and extended hours mediation before Mediator Lee Parks, followed by several additional months of continued negotiations regarding the specific non-monetary terms of the Settlement Agreement. The Court granted preliminary approval of the Settlement by its Preliminary Approval Order [Doc. 40].

Under Sections 6 and 7 of the preliminarily approved Settlement Agreement [Doc. 38-1], Earth Fare expressly agreed that it does not oppose any request by Class Counsel for an award of fees and costs that does not exceed one-third (1/3) of the $1.2 million Total Settlement Amount, and the parties agreed that the two named Plaintiffs (Bonita Bartles and Stephen Cobb) will receive service payments of up to $2,000 each. This motion seeks approval of those amounts.

## II.     Summary of the Settlement and Relief Presently Sought

The preliminarily approved Settlement provided that Earth Fare will pay a total sum not to exceed $1,200,000.00 (the "Total Settlement Amount") on a claims-made basis in order to resolve the class/collective action claims for allegedly unpaid overtime worked in Covered Positions during the period. [Doc. 38-1] Each claimant's payment will vary proportionately in relation to their number of weeks worked in a Covered Position during the Federal Class period, as each claimant will receive their pro rata share of the settlement amount based upon the workweeks they worked during the applicable period when compared with the total workweeks worked by all potential claimants for the applicable period. The Total Settlement Amount was designed to cover all back pay and liquidated/statutory damages available for the claims released under each applicable law, as well as the Class Counsel's attorneys' fees and costs and service payments to the two named Plaintiffs at issue in this motion. (Id. at Sections 6-7) The Settlement also pays the full amount of the participating class members' W-2 withholdings (and state/local withholdings if applicable) and any employer share of payroll taxes on back wage

3

payments made to participating claimants.  (Id. at Section 5(a))  Finally, separate from and in addition to the Total Settlement Amount, Earth Fare has agreed to pay the full cost of the administration of the settlement (with the exception of additional skip tracing costs that Class Counsel agreed to pay out of fees and costs awarded)[3] and the mediator's costs through the date of mediation, instead of having such monies included in the settlement amount.  (Id.)

There were 436 putative members in the combined Federal and State classes.  Of those, thirty-one (31) filed consents to join the lawsuit and were therefore automatically included as participants in the Settlement.  Notice of settlement was distributed to the remaining 405 putative class members, who had a 45 day period within which to submit a claim.

The settlement was and continues to be administered by an independent and experienced third-party settlement administrator, Rust Consulting (the "Settlement Administrator").  The Settlement Administrator: (i) ran addresses through the U.S. Postal Service's National Change of Address database, (ii) calculated the amount that a putative class member would receive from the settlement if this Court approves the 1/3 attorney's fees and costs and $2,000 service payments requested, and included that individualized amount for each putative class member in their Court-approved Notice, (iii) mailed the court-approved Notices setting forth the material settlement terms including instructions on how to submit objections to the settlement or opt-out of the Settlement altogether, (iv) operated a call center with a dedicated toll-free telephone

---

[3] No amount of Settlement Administrator costs will be paid out of the Settlement Fund, and no amount of Settlement Administrator costs will decrease a Participating Class Member's share of the Settlement Fund.  After months of post-mediation negotiations regarding the non-monetary issue of what duties and efforts will be required of the Settlement Administrator to locate putative class members after receiving an undeliverable notice from the United States Postal Service with no forwarding address, Class Counsel agreed to bear the cost of certain of the Settlement Administrator's fees related to skip tracing and remailing of undeliverables, and Class Counsel will pay such fees directly from their awarded fees and costs at issue in this motion.

number, (v) mailed (or re-mailed) notices to any putative class member who called or otherwise contacted the Settlement Administrator stating that they had not received their notice and requesting same, (vi) mailed reminder letters via certified mail to every putative class member who had not already submitted a claim form thirty days after initial mailing, (vii) processed all notices returned as undeliverable by either remailing to the forwarding address provided by the U.S. Postal Service, or performing skip tracing to determine a correct address and remailing to the address resulting from skip tracing, (viii) processed all claim forms, and (ix) distributed updated notice mailing activity and notice response activity reports to counsel for the parties.

Of the 405 putative class members who were mailed notice of settlement, 195 submitted claim forms to participate in the settlement,[4] for a total plaintiff participation rate of 226 out of a maximum possible 436 (52% participation rate). No class member filed any objection to the settlement, or any request for exclusion from the settlement, within the deadline or thereafter.

Having achieved an excellent settlement for the class in this case, Plaintiffs hereby move for approval of the amount of attorney's fees, costs, and service awards agreed upon by the parties in the Settlement. Specifically, Plaintiffs move for an award of attorney's fees and costs in the combined total of $400,000.00, representing one-third (1/3) of the $1.2 million Total Settlement Amount, and for an award of service payments of $2,000 to each of the two named Plaintiffs.

The requested award of fees and costs is justified by the work and investment required by Class Counsel, the risk involved in prosecuting the claims on a contingency fee basis, the level of

---

[4] Two class members submitted claim forms postmarked shortly after the response deadline. The court-appointed administrator of the estate of a decedent class member submitted a claim form on behalf of the decedent class member's estate. The parties have agreed to include those three claim forms within this settlement, for a total of 195 claim forms submitted in response to the notice procedure, in addition to the 31 plaintiffs already included in the settlement as a result of filing consents to join this lawsuit.

skill and expertise required, the complexity of the case, and the exceptional recovery achieved for a class of plaintiffs who had not timely asserted their rights before most if not all of their unpaid overtime claims had expired by the running of the statute of limitations. The requested service awards are also justified by the work and time invested by the named Plaintiffs on behalf of the class, the risk of adverse effects on current or prospective employment that is involved in having one's name attached to a class/collective action against an employer as a named plaintiff, and is supported by numerous decisions by district courts. All fees, costs, and expenses requested for approval in this motion are, as of today's date, unopposed by the class members.[5]

### III.     Procedural History

Plaintiffs filed their Amended Complaint asserting collective action claims on February 7, 2014. ([Doc. 3])  Plaintiffs promptly moved for conditional certification of their FLSA collective action on April 14, 2014. ([Doc. 19])  The parties agreed to stay the litigation in order to explore settlement, exchanged week-by-week payroll documents for the entire putative class and other documents, prepared comprehensive mediation statements analyzing all issues of liability and damages, and engaged in a full day mediation.

The parties eventually settled the case after mediation and months and months of additional post-mediation negotiations, and the Court granted preliminary approval of the Settlement on July 19, 2015 [Doc. 40] after conducting a telephonic hearing with counsel for the parties. The final fairness hearing is set for November 19, 2015.

---

[5]  Again, each putative class member received a Court-approved Notice that specifically reflected the gross amount they would receive from this settlement (net of fees, costs, and service payments) if this Court approves the requested 1/3 attorney's fees and costs and the $2,000 named Plaintiff service payments. ([Doc. 38-1] Tab B "Notice," Section 5)  Thus, each putative class member was informed not only that Class Counsel would seek the award amounts requested in this motion, but also of the actual gross amount they would individually receive on their timely submitted claim if this Court approves the exact attorney's fees, costs, and service payment amounts requested herein. No class member objected or requested exclusion from the settlement.

**IV.	Legal Analysis**

    **A.	The Service Payments Are Appropriate And Within Accepted Ranges.**

Incentive awards are routinely awarded to named plaintiffs for the services they provided and the risks they undertook during the litigation. *Hosier v. Mattress Firm, Inc.,* 2012 WL 2813960, *5 (M.D. Fla. June 8, 2012) (quoting *Ingram v. The Coca–Cola Co.,* 200 F.R.D. 685, 694 (N.D. Ga. 2001) (additional citations omitted)).

In this case, the named Plaintiffs worked extensively with Class Counsel in providing information and documentation required to prosecute the action, participated in settlement negotiations remotely throughout the mediation and thereafter, acted to protect the rights of absent class members resulting in a substantial benefit to the putative class, and assumed direct financial risk (that of an adverse judgment taxing costs if unsuccessful under Fed. R. Civ. P. 54) and indirect financial risk (that of potential adverse consequences on their current or prospective employment arising out of their appearance in online-searchable court filings as named plaintiffs).  Plaintiffs therefore request service awards in the $2,000 amounts agreed upon by the parties in the Settlement preliminarily approved by this Court.

The requested $2,000 service payment per named Plaintiff should be approved as well within the accepted range of service payments to plaintiffs in similar class/collective actions in the Eleventh Circuit.  *See, e.g., Encarnacion v. J.W. Lee, Inc.*, No. 14-CIV-61927, 2015 WL 6437686, at *5 (S.D. Fla. Oct. 22, 2015) (approving service payment of $15,000 to class representative plaintiff in hybrid FLSA/Rule 23 state law class/collective action); *Sherman v. Corizon Health, Inc.*, No. 2:12-CV-635-FTM, 2014 WL 5690024, at *3 (M.D. Fla. Nov. 4, 2014) (approving service payment of $2,500 to named plaintiff); *Vogenberger v. ATC Fitness Cape Coral, LLC*, No. 2:14-CV-436-FTM-29CM, 2015 WL 1883537, at *5 (M.D. Fla. Apr. 24, 2015) (approving service payment of $2,000 to named plaintiff).

B.      The Attorney's Fees and Costs Are Appropriate And Within Accepted Ranges.

Pursuant to the Preliminary Approval Order, this Settlement involves a hybrid FLSA collective action/Rule 23 state law class action settlement of claims arising out of hours worked in Covered Positions.  Pursuant to Rules 23(f), 23(g) and 54(d)(2), Class Counsel previously moved this Court to be designated as Class Counsel and to preliminarily approve a settlement notice procedure that notified putative class members (i) that Class Counsel would seek attorney's fees and costs up to the amount of 33 1/3% of the Total Settlement Fund, and (ii) of the gross settlement amount each class member would individually receive as the amount net of all fees and costs if the Court approves the requested 33 1/3% attorney's fees and costs.  [Doc. 38]  The Court preliminarily approved the settlement [Doc. 40], and notice issued accordingly.

Plaintiffs in this hybrid class/collective action are entitled to recovery of attorney's fees and costs under the mandatory "prevailing plaintiff" fee-shifting provision of Section 216(b) of the FLSA, as well as from the settlement of a class action upon motion under Fed. R. Civ. P. 54(d)(2) and 23(h).  The attorneys' fees, expenses and costs here are being compensated from a common fund pursuant to Eleventh Circuit precedent.  *See Camden I Condo. Assoc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("[W]e believe that the percentage of the fund approach is the better reasoned in a common fund case.  Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class.").  The Supreme Court and the Eleventh Circuit have held that it is appropriate that the attorneys' fees be awarded on the entire maximum gross settlement fund, even though amounts to be paid to settlement class members who do not file claims form will remain the sole and exclusive property of Earth Fare.  *See Boeing Co. v. Van Gemert, et al.*, 444 U.S. 472, 480-81 (1980) (attorney's fees properly awarded from total amount of class action

8

judgment, including the unclaimed portion of judgment, since each class member had present vested interest in class recovery and could collect his share of judgment upon request, and thus absentee class members had received a benefit within meaning of common fund doctrine which allows assessment of attorney's fees against a common fund created by lawyers' efforts); *Waters v. International Precious Metals Corp.*, 190 F.3d 1291, 1296-97 (11th Cir. 1999).  Thus, because Class Counsel secured for the benefit of the putative class a common fund of $1.2 million, Plaintiffs seek an award of attorney's fees at 33 1/3% of the common fund $1.2 million Total Settlement Amount.

        1.     *33 1/3% Is An Accepted And Approved Common Fund Fee Award In This Circuit.*

The average percentage of the fund fee award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third.  *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *5 (S.D. Fla. Sept. 26, 2012) report and recommendation adopted, 2012 WL 5289628 (S.D. Fla. Oct. 25, 2012) (citing generally *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1291 (11th Cir. 1999) (awarding one-third on a $40 million recovery)).  Thus, the attorneys' fee award[6] sought by Class Counsel is similar to those that have been approved by courts within the Eleventh Circuit.  *See, e.g., Seghroughni v. Advantus Rest., Inc.*, 2015 WL 2255278, at *1 (M.D. Fla. May 13, 2015) (holding in hybrid FLSA/state law class action case that "[a]n attorney's fee ... which is

---

[6] As a preliminary matter, the parties agreed that Plaintiffs could petition for an award of 33 1/3% of the Total Settlement Fund for both fees and costs combined.  And although the Settlement Administrator has not yet provided Class Counsel with the costs to be paid directly by Class Counsel for additional skip tracing and remailing charges, Class Counsel estimates that its total costs advanced in this litigation through travel to/from the final fairness hearing could be approximately $10,000 (or 1%) of the Total Settlement Amount.  Thus, the attorney's fee award sought in this motion more closely approximates 32 1/3% of the common fund.  Plaintiff will present final supporting documentation and in-person testimony at the final fairness hearing regarding time expended and costs incurred through final approval proceedings.  (See Joint Motion for Settlement Approval [Doc. 38] ("At th[e final fairness hearing], moreover, Class Counsel will present their application for their fees and expenses pursuant to Rule 23(h)…")).

one-third of the settlement fund ... is fair and reasonable in light of the results obtained by the Lead Counsel, the risks associated with this action, the Lead Counsel's ability and experience in class action litigation, and fee awards in comparable cases."); *Vogenberger v. ATC Fitness Cape Coral, LLC*, 2015 WL 1883537, at *4 (M.D. Fla. Apr. 24, 2015) (approving attorney's fees of 33 1/3% of the common fund in FLSA collective action); *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26, 2012) (awarding 33 1/3 of the common fund amount as consistent with awards in the Eleventh Circuit); *Morefield v. NoteWorld, LLC*, 2012 WL 1355573 (S.D. Ga. April 18, 2012) (class settlement approved with 33 1/3 of the common fund payable as attorneys' fees); *Atkinson v. Wal–Mart Stores, Inc.*, 2011 WL 6846747, at *6 (M.D. Fla. Dec. 29, 201l) (approving class settlement with one-third of maximum common fund apportioned as attorney's fees).

Moreover, Class Counsel prosecuted this litigation, advancing costs and investing time and resources without receiving any compensation and with full risk of partial or no recovery, on a full contingency basis. Courts have recognized that undertaking a full contingency risk further supports a 33 1/3 percentage of fund fee recovery in class cases:

> This risk was magnified by the fact that, unlike some class actions, this case was a full, not partial, contingency fee case. Class Counsel was not guaranteed their hourly rates or reduced hourly rates for their efforts in this litigation, nor was any hybrid contingent fee negotiated guaranteeing Counsel at least some minimum amount for fees and costs. See Walco Invs., Inc. v. Thenen, 975 F.Supp. 1468, 1472 (S.D.Fla.1997) (noting that "the presence of a consistently paying client for four years, even at a reduced hourly rate, would warm the heart, let alone the pocketbook, of even the most successful securities litigator").

*Wolff*, supra, 2012 WL 5290155, at *2.

This risk inherent in pursuing this class/collective action on a purely contingency fee basis is particularly significant in retail manager misclassification cases, many of which have

resulted in class/collective certification being denied or decertified,[7] were dismissed on summary judgment,[8] or were tried to a jury resulting in a defense verdict.[9]

Under the particular facts of this case, for example, Plaintiffs faced risks of certification denial or decertification where the Department Managers at issue held eleven different job titles in a variety of store sizes and varying locations, which distinguished this case from the majority of other retail misclassification cases, which usually involve one common job title (i.e., "Assistant Store Manager").  And even if Plaintiffs prevailed on the merits regarding their misclassification arguments, as a factual matter, either (1) proving "willfulness" in order to get a third year of statute of limitations under the FLSA or (2) an absence of "good faith" by Earth Fare in order to obtain liquidated damages is rarely a given in overtime misclassification cases.

### 2. *The Value Of The Benefit To The Class Supports The Fee*.

Class Counsel's efforts in this case resulted in a Total Settlement Fund of $1.2 million for the benefit of 436 putative class members.  In their joint motion for preliminary approval, the parties estimated the per-person average recovery amount to be approximately $1,850 after payment of all fees, costs, and service awards in the amounts requested in this motion.  That amount is comparable to the per-person average settlement amounts in similar retail manager FLSA misclassification cases.  For example, it compares extremely favorably to the per-person average of $1,845 for a recent Rite Aid nationwide Assistant Store Manager and Co-Manager

---

[7]   *See, e.g., Cook v. Family Dollar Stores of Conn., Inc.,* 2013 WL 1406821 (Conn. Super. Ct. Mar. 18, 2013) (denying class certification of retail store manager wage and hour class action); *Johnson v. Big Lots*, 561 F. Supp. 2d 567 (E.D. La. 2008) (decertifying FLSA collective action of retail store managers).

[8]   *See In re Family Dollar FLSA Litig.*, 637 F.3d 508 (4th Cir. 2011) (defendant obtained more than 60 summary judgments in a MDL proceeding in North Carolina of retail store manager wage and hour FLSA litigation).

[9]   *See, e.g., Perkins v. Southern New England Telephone Co Inc.,* No. 3:07-00967, Dkt No.578 (D. Conn. Oct. 24, 2011) (FLSA manager misclassification collective action resulting in defendant's verdict); *Henry v. Quicken Loans, Inc.*, 698 F.3d 897 (6th Cir. 2012) (affirming collective action defendant's verdict on FLSA claims); *Bell v. Citizens Fin. Group*, No. 2:10-cv-00320 (W.D. Pa.) (jury verdict for defendant on bank manager FLSA claims).

settlement, because the Rite Aid settlement was payment for a full three (3) year potential recovery period – unlike in this case, where the $1,850 per-person amount here was paid for only half as many eligible work weeks, the maximum one and a half (1.5) year recovery period remaining available (even with the tolling agreement negotiated by Class Counsel for the benefit of the class) due to the running of the statute of limitations over the period of time after Earth Fare reclassified the position to overtime-eligible in October, 2012.[10] *See also Alli v. Boston Market Corp.*, 2012 WL 1356478 (D. Conn. Apr. 17, 2012) (final approval for hybrid FLSA/state law settlement at common fund of $3 million for 1,921 class members, at a per-person amount of $1,561 for maximum possible three year FLSA period and for maximum possible three and six year periods on applicable CT and NY state law class claims; awarding fees at 33 1/3 of common fund plus costs); *Jenkins v. Sports Authority*, No. 09-cv-224 (E.D.N.Y. Sep. 30, 2011) (final approval of $990,000 settlement for class of 559 co-managers at per-person amount of $1,771).[11]

Although the Settlement Administrator has not yet completed final calculations based on claim forms received, the amounts of which will be confirmed in the parties' motion for final approval prior to the final fairness hearing, it is Plaintiffs' understanding from initial information received that the total number of work weeks claimed for payment in this settlement by the 226

---

[10] *See Craig v. Rite Aid Corp.*, No. 4:08-cv-02317-JEJ [DE-572, p. 36] (M.D. Pa. 2012) (approving motion for final nationwide consolidated class-wide settlement approval for 7,342 class members who were Assistant Store Managers or Co-Managers at per-person average of $1,845 for weeks worked during maximum three year FLSA recovery period, after all fees, costs, and service awards).

[11] The per-person amount recovered net of fees also compares favorably to wage and hour class/collective actions involving other businesses that courts have held to be significantly beneficial to the class. *See, e.g., Chemi v. Champion Mortg.*, No. 2:05-cv-l238 (WHW), 2009 WL 1470429, *11 (D.N.J. May 26, 2009) (holding a $1.2 common fund to benefit 917 class members in a wage-and-hour settlement was significant); *Lenahan v. Sears, Roebuck and Co.*, 2006 WL 2085282 (D.N.J. July 24, 2006) (holding a common fund representing an average recovery of $937 for 16,000 class members in a wage-and-hour settlement was significant).

participating opt-in and claimant plaintiffs represents approximately 57% of the total eligible weeks worked by all 436 putative class members. This would result in an average settlement payment (again, net of all fees, costs, and service payments) of approximately $2,011 per participating claimant in this settlement – which obviously compares even more favorably to nationwide retail manager misclassification cases than the originally estimated $1,850/person amount. *See, e.g., Hegab v. Family Dollar Stores, Inc.*, 2015 WL 1021130 (D.N.J. Mar. 9, 2015) (granting final approval of retail manager claims-made overtime settlement where 265 of the 557 potential class members filed claims forms, resulting in a participation rate of almost 47%, for approximate per-person recovery of $2,064; awarding attorney's fees of 30% of $1.115 million common fund settlement plus reimbursement of costs).

As with most settlements, this settlement provides early relief to class members,[12] and eliminates the risks of delay and heightened expenses that the parties would otherwise incur if this litigation were to continue. But the benefit to the class is greater than usual under the unique posture of this case because it involved a dwindling recovery period: damages accrual ended with the October 2012 reclassification date, and even with the tolling agreement negotiated by Class Counsel on behalf of the entire putative class prior to settlement beginning April 2011, if the case did not settle and the tolling agreement thereby ended, any delays in obtaining collective action certification and notice to the class would have resulted in erosion of (and many cases, total loss of) class member's FLSA claims due to the running of the FLSA's two-year, or at most

---

[12] As the Manual for Complex Litigation recognizes, "one purpose of the percentage [of fund] method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex and novel litigation." MCL 4th § 14.121. Thus, where class members obtain the benefit of speedy, high-value resolution, "[t]here is no reason that [lodestar] multipliers, in such cases, should be low . . . . [H]istorically, multipliers have [only] been low . . . because the quick, magnificent recovery rarely occurs in the real world." *In re Superior Beverage/Glass Container Consol. Pretrial*, 133 F.R.D. 119, 126 (N.D. Ill. 1990).

three-year for willfulness, statute of limitations which is based on the date of each individual's filed Consent.

Finally, Plaintiffs negotiated for the benefit of the class a very narrow release, rather than the broad general release clause in FLSA settlement agreements that other judges in this district have rejected as disfavored in *Webb v. CVS Caremark Corp.*, No. 5:11–cv–106(CAR), 2011 WL 6743284, at *3 (M.D. Ga. Dec. 23, 2011) and *Nichols v. Dollar Tree Stores, Inc.*, No. 1:13-CV-88 WLS, 2013 WL 5933991, at *3 (M.D. Ga. Nov. 1, 2013).

### 3. *A Lodestar Cross-Check Will Support The Requested Fee Award.*

Again, the parties agreed that Plaintiffs will present final supporting documentation and in-person testimony at the final fairness hearing regarding time expended and attorney's fees incurred through final approval proceedings. (*See* Joint Motion for Settlement Approval [Doc. 38] ("At th[e final fairness hearing], moreover, Class Counsel will present their application for their fees and expenses pursuant to Rule 23(h)…")). Where there have been no objections, some courts have held that "a full-blown lodestar analysis is an unnecessary and inefficient use of judicial resources." *Dewey v. Volkswagen of* America, 728 F. Supp. 2d 546, 592-93 (D.N.J. 2010).

Nonetheless, Plaintiff anticipates that the attorney's fees incurred through the conclusion of final approval proceedings, calculated based on the "lodestar cross-check," will be well within the range of lodestar multipliers that courts have found reasonable and acceptable in common fund settlements. *See, e.g., Steiner v. Am. B'casting Co., Inc.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (multiplier of 6.85 "falls well within the range of multipliers that courts have allowed"); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (listing nationwide class action settlements where multiplier ranged up to 19.6 times lodestar); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) (holding "we are cognizant

14

that '[m]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied,' 3 *Newberg* § 14.03 at 14–5."); *Yuzary v. HSBC Bank USA, N.A.*, 2013 WL 5492998, at *11 (S.D.N.Y. Oct. 2, 2013) (awarding multiplier of 7.6 in bank manager wage and hour misclassification class action); *Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012) (holding in approval of hybrid FLSA/state law class/collective action that "[c]ourts commonly award lodestar multipliers between two and six.").

    4. *The Strong Participation Rate And Absence Of Any Objectors Supports Approval.*

The absence of objections or requests for exclusion indicates that the settlement terms and the attorney's fees in the percentage of fund amount provided in the Settlement and Court-approved Notice are reasonable. *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005). Here, the strong participation rate (estimated approximately 57% of total eligible work weeks claimed for settlement payment) coupled with the complete absence of any objections or requests for exclusion from the settlement support the fee award requested in this motion.

    5. *The Skill And Experience Of Class Counsel Supports Approval.*

Class Counsel has specialized expertise representing plaintiffs in FLSA and state law wage and hour class and collective actions.[13] Through skillful litigation practice and settlement

---

[13]     *See, e.g., Ott v. Publix Super Markets, Inc.*, No. 3:12-cv-00486 (M.D. Tenn.) (lead counsel for company-wide conditionally certified class of all Assistant Department Managers and Department Managers, company-wide settlement approved); *White, et al v. Publix Super Markets, Inc.*, No. 3:14-cv-01189 (M.D. Tenn.) (co-lead counsel for 216(b) FLSA collective action for all grocery store hourly associates, conditional certification granted and summary judgment granted for plaintiffs on one of their FLSA claims); *Ouellette v. The Fresh Market, Inc.*, No. 3:13-cv-01027-AWT (D. Conn.) (lead counsel for 216(b) FLSA collective action for all grocery store Department Heads, conditional certification motion pending, case stayed pending mediation of nationwide collective action); *Jackson v. Embrace Home Loans*, No. 1:13-cv-00739-ML-LDA (D.R.I.) (co-lead counsel for conditionally certified 216(b) FLSA collective action for all mortgage loan officers); *Amador v. The Brickman Group, Ltd., LLC*, No. 3:13-cv-02529 (M.D. Pa.) (co-lead counsel for conditionally certified 216(b) FLSA collective action for all commercial landscaping supervisors, hybrid class action alleging Pennsylvania state law class claims, company-wide hybrid FLSA and all state wage and hour claims settlement pending court approval);

15

negotiation, Class Counsel obtained tolling for the benefit of the entire putative class, obtained a common fund settlement with recoveries within the range that courts have deemed significant at a relatively early juncture, and thereby avoided the need for dispositive motions, extensive class discovery and certification/decertification proceedings, and trial. This result reflects skill and experience in nationwide wage and hour litigation, and it is that skill and experience that further supports the requested attorney's fees and costs award in this case.

### 6. The Complexity Of The Litigation Supports Approval.

The Supreme Court has noted that "FLSA claims typically involve complex mixed questions of fact and law." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728 (1981). This settlement involved claims under the FLSA and the wage and hour laws of all of the states in which Earth Fare operated grocery stores during the applicable recovery period.  Adding to the complexity of litigating the federal and state overtime wage and hour laws, the case (and its settlement) involved complex procedural issues under the FLSA and Fed. R. Civ. P. 23.  The complexity of both the case and its resolution is evidenced by the fact that it took many months after the initial in-person mediation to negotiate to final agreement the various and significant non-monetary terms that each side pursued – some of which were resolved by non-inclusion. The complexity of this case and this settlement therefore supports approval of the fees requested. *See, e.g., Lenahan v. Sears, Roebuck and Co.*, 2006 WL 2085282, *20 (D.N.J. July 24, 2006) (acknowledging that wage and hour laws are complex, and noting that the complexity of the settlement impacts the fee approval analysis).

---

*Wilson, et al v. Micros Systems Inc.*, No. 3:13-cv-01328 (M.D. Tenn.) (lead counsel for conditionally certified 216(b) FLSA collective action for all Implementation Specialists, court approved settlement); *Beck v. Bed Bath and Beyond Inc.*, No. 131100176 (Phil. Cty. Court of Common Pleas) (appointed co-class counsel for state law wage and hour class action on behalf of retail store department managers).

16

## **CONCLUSION**

The settlement obtained for the benefit of the class offers exceptional monetary relief to the class that amounts to a reasonable percentage of the possible recovery in this matter. If the Plaintiffs and the putative class members continued this litigation, they would face complex legal and factual issues, significant defenses, enormous costs, risk of denial of class certification or decertification, and risk of an adverse judgment on issues of liability and/or calculation of damages. The fact that no putative class members opted out of or otherwise objected to the settlement shows strong support for the settlement, and strong affirmation that Class Counsel have earned their fees in the 33 1/3 percentage of fund amount that class members were notified they would request from this Court. Thus, pursuant to Rule 23 and Section 216(b) of the FLSA, the Court should grant final approval of the award of the attorney's fees, costs, and service payments requested in this motion.

Respectfully submitted this 9th day of November, 2015.

>    */s/ C. Andrew Head*
>    C. Andrew Head
>    Georgia Bar No. 341472
>    Jerilyn E. Gardner
>    Georgia Bar No. 139779
>    Attorneys for Plaintiffs
>    Head Law Firm, LLC
>    1170 Howell Mill Rd., NW, Ste. 305
>    Atlanta, GA 30318
>    Tel: (404) 924-4151
>    Email: ahead@headlawfirm.com;
>    jgardner@headlawfirm.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 9th day of November, the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent by email to the following parties registered with the Court's electronic filing system:

Alyssa Peters, Esq.
Christopher Pardo, Esq.
Jonathan Yarborough, Esq.
*Attorneys for Defendant*
Constangy, Brooks & Smith, LLP

/s/ C. Andrew Head
C. Andrew Head
Georgia Bar No. 341472
Jerilyn E. Gardner
Georgia Bar No. 139779
Attorneys for Plaintiffs
Head Law Firm, LLC
1170 Howell Mill Rd., NW, Ste. 305
Atlanta, GA 30318
Tel: (404) 924-4151
Email: ahead@headlawfirm.com;
jgardner@headlawfirm.com