IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| BONITA BARTLES and STEPHEN COBB, individually and on behalf of others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Civil Action No. 3:14-CV-00015-CDL ) |
| EARTH FARE, INC., | ) ) ) |
| Defendant. | ) |

**JOINT MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT AND AWARD OF ATTORNEY'S FEES AND EXPENSES AND SERVICE PAYMENTS WITH INCORPORATED MEMORANDUM OF LAW**

Plaintiffs Bonita Bartles and Stephen Cobb ("Plaintiffs"), by and through their counsel, and Defendant Earth Fare, Inc. ("Earth Fare" or the "Company"), by and through its counsel, (collectively referred to herein as the "Parties") hereby move the Court for final approval under Section 216(b) of the Fair Labor Standards Act ("FLSA") and Fed. R. Civ. P. 23(e) granting final approval of the settlement of this action as a hybrid collective and class action as reflected in the Second Amended Complaint [Doc. 38-3] and the Settlement Agreement [Doc. 38-1] ("Settlement"), awarding attorney's fees and expenses to Class Counsel pursuant to Fed. R. Civ. P. 23(h) and Fed. R. Civ. P. 54(d)(2) and service payments in the amounts requested in Plaintiffs' Motion [Doc. 43], and providing for the relief detailed in the Proposed Order for final approval of settlement (attached as Exhibit B hereto) after conclusion of the final fairness hearing set for November 19, 2015 as follows:

1) granting final approval of the settlement and incorporating the terms of the Settlement Agreement [Doc. 38-1] as the judgment in this action;

1

2) granting final certification of the collective action pursuant to Section 16(b) of the FLSA and the state law classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, for settlement purposes only, as described in the Second Amended Complaint [Doc. 38-3];

3) appointing Head Law Firm, LLC as Class Counsel for the Rule 23 state law classes;

4) awarding payment to Class Counsel of attorney's fees and costs in the combined amount of $400,000 (33 1/3% of the Total Settlement Amount); and

5) awarding service payments from the Total Settlement Amount of $2,000 each for the two named Plaintiffs reflected in the style of the case above.

## I.   Introduction

This overtime case was filed as a collective action on February 7, 2014 [Docs. 1, 3], and ultimately settled a year and a half later after the parties engaged in litigation, exchanged necessary payroll and other documents to evaluate potential resolution, engaged in a full day and continued mediation, negotiated non-monetary terms, and presented their joint motion for preliminary approval [Doc. 38] in July, 2015.  The Court preliminarily approved the settlement after a telephonic hearing [Doc. 40], and the Settlement Administrator completed the required notice and claims procedure.  The Settlement Administrator mailed to each putative class member (who had not already filed a Consent to join and thereby would automatically participate in settlement) the Court-approved notice packet, which contained all necessary information about the settlement as well as the actual gross amount that each individual recipient would personally receive from the settlement based on their number of covered work weeks if (i) they chose to participate in the settlement by submitting a claim form, and (ii) the Court approved the award of attorney's fees, costs, and service payments in the exact amounts requested by Plaintiffs in their approval motion [Doc. 43].  (Declaration of C. Andrew Head ("Head Decl.") [Doc. 44-1], ¶ 7; Declaration of Abigail Schwartz ("Schwartz Decl.") [Doc. 44-2], ¶¶ 5, 6)

Thus, the parties hereby request final approval of a settlement that will pay each participating class member exactly the individual gross amounts (which were the gross amounts to be paid after payment of all attorney's fees, costs, and service payments) that the Notice said they would receive upon final approval.

The reaction of the Class was extremely positive: 226 (52%) of the 436 putative class members participated in the claims-made settlement, claiming payment for 10,335 (57%) of the 18,098 the total combined work weeks within the settlement recovery period, and there were no objectors and no requests for exclusions filed by the deadline or at any time thereafter. (Head Decl. [Doc 44-1], ¶ 10; Schwartz Decl. [Doc 44-2], ¶¶ 10, 11) Class Counsel has received positive feedback and expressions of gratitude about their recoveries from participating class members. (Head Decl. [Doc 44-1], ¶ 10)

## II.     Summary of Allegations, Settlement, and Settlement Procedure:

The facts and procedural history of this case, as well as the terms of settlement and the notice and settlement procedure, were fully summarized in the joint motion for preliminary approval [Doc. 38] that the Court granted on July 29, 2015 [Doc. 40].

### A.     Facts, Allegations, and Defenses.

As a brief summary for this final approval motion, however, the case alleged misclassification of eleven (11) Department Manager positions in all of Earth Fare's grocery store locations up until October 2012, when Earth Fare internally reclassified the position to hourly-paid overtime-exempt but did not pay back wages or liquidated damages. Earth Fare denies that the positions were misclassified as exempt, denies all liability, opposes Plaintiffs' method of calculating damages in misclassification cases, and denies that Plaintiffs are entitled to any recovery of damages at all.

B. <u>Settlement</u>.

The parties engaged in a full day and extended mediation, followed by months and months of professional, respectful, but vigorous debate and negotiation over non-monetary terms and settlement claim procedures, ultimately settling the case by signed Agreements in July, 2015. (Head Decl. [Doc 44-1], ¶ 5)  The settlement provided that Earth Fare would pay up to $1.2 million ("Total Settlement Fund") on a claims-made basis for the unpaid overtime claims of the 436 putative class members during the period of (i) the earlier of three years preceding their Consent filing date or of April 16, 2014, the start date of the parties' tolling agreement [Doc. 24], and (ii) the October 27, 2012 reclassification date, with Class Counsel to seek an award of 33 1/3% of the Total Settlement Fund for combined fees and costs without opposition, and Plaintiffs to seek service payments of $2,000 per named Plaintiff.  [Doc. 38-1] Adding additional value to the settlement, Earth Fare agreed to pay the full cost of the administration of the settlement[1] and the mediator's costs separate from and in addition to the Total Settlement Amount, instead of having such monies included in the settlement amount.  [Doc. 38-1]

Under the terms of the settlement, each claimant's payment will vary proportionately in relation to their number of weeks worked in a Covered Position during the Federal Class (FLSA) period, as each claimant will receive their pro rata share of the settlement amount based upon the

---

[1] No amount of Settlement Administrator costs will be paid out of the Settlement Fund, and no amount of Settlement Administrator costs will decrease a Participating Class Member's share of the Settlement Fund.  After months of post-mediation negotiations regarding the non-monetary issue of what duties and efforts will be required of the Settlement Administrator to locate putative class members after receiving an undeliverable notice from the United States Postal Service with no forwarding address, Class Counsel agreed to bear the cost of certain of the Settlement Administrator's fees related to skip tracing and remailing of undeliverables, and Class Counsel intend to pay such fees directly from their awarded fees and costs – the amount of which was not increased to account for the additional settlement administration costs that Class Counsel subsequently agreed to pay directly.  Thus, Class Counsel's agreement to pay certain settlement administration costs did not affect the class member recovery amounts, and instead only decreased the amount of the 33 1/3% amount that constitutes payment of Class Counsel's fees.

4

workweeks they worked during the applicable period when compared with the total workweeks worked by all potential claimants for the applicable period.  [Doc. 38-1]

      C.      <u>Settlement Procedures</u>.

The settlement was and continues to be administered by an independent and experienced third-party settlement administrator, Rust Consulting (the "Settlement Administrator").  In accordance with the settlement notice and claims procedures detailed in the Settlement Agreement [Doc. 38-1], as modified by the Court's entry of the parties' consent Order [Doc. 42], the Settlement Administrator: (i) ran addresses through the U.S. Postal Service's National Change of Address database, (ii) calculated the gross amount that each putative class member would individually receive from the settlement if this Court approves the 1/3 attorney's fees and costs and $2,000 service payments requested, and included that individualized amount for each putative class member in their Court-approved Notice [Doc. 83-1, Tab B], (iii) mailed the court-approved Notices setting forth the material settlement terms including instructions on how to submit objections to the settlement or opt-out of the Settlement altogether, (iv) operated a call center with a dedicated toll-free telephone number, (v) mailed (or re-mailed) notices to any putative class member who called or otherwise contacted the Settlement Administrator stating that they had not received their notice and requesting same, (vi) mailed reminder letters via certified mail to every putative class member who had not already submitted a claim form [Doc. 83-1, Tab C] thirty days after initial mailing, (vii) processed all notices returned as undeliverable by either remailing to the forwarding address provided by the U.S. Postal Service, or performing skip tracing to determine a correct address and remailing to the address resulting from skip tracing, (viii) processed all claim forms, and (ix) distributed updated notice mailing activity and notice response activity reports to counsel for the parties.  (Head Decl. [Doc 44-1], ¶ 8; Schwartz

Decl. [Doc 44-2], ¶¶ 4-9)  If this Court grants final approval, the Settlement Administrator will distribute settlement payments to the participating class members.  (Head Decl. [Doc 44-1], ¶ 7)

The Settlement Administrator distributed Court-approved Notice (followed by a certified mail reminder notice) to putative class members advising them of the settlement terms and payment allocations, and of their opportunity to participate, object, or request exclusion within the 45 day response period (extended for undeliverables), with such notice being distributed more than 100 days prior to the final fairness hearing.  (Head Decl. [Doc 44-1], ¶ 9; Schwartz Decl. [Doc 44-2], ¶ 5)  Of the 35 notices returned by the U.S. Postal Service to the Settlement Administrator as undeliverable, the Settlement Administrator was able to determine a most current mailing address by skip tracing for 32 of the 35 individuals and re-mail the notice packet to that updated address, and only three (3) notices were returned as undeliverable after re-mailing from skip tracing.  (Head Decl. [Doc 44-1], ¶ 9; Schwartz Decl. [Doc 44-2], ¶ 7)  Thus, the parties submit that there can be no doubt that the notice program complied with the requirements of Fed. R. Civ. P. 23 and due process.[2]

---

[2] Rule 23(c)(2)(B) requires the Court to direct to members of the settlement classes the "best notice practicable" under the circumstances, including "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).  As the Supreme Court has held, notice by mail provides such "individual notice to all members" in accordance with Rule 23(c)(2). *Id.* Where the names and addresses of the Class Members are easily ascertainable, individual notice through the mail is "clearly the 'best notice practicable.'" *Id.* at 175; *see also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374-75 (9th Cir. 1993) (notice generally describing terms of settlement and formula for computing awards, mailed out 45 days before hearing met requirements of Rule 23 and due process); *Miller v. Republic Nat'l Life Ins. Co.,* 559 F.2d 426, 429 (5th Cir. 1977); *In re Equity Funding Corp.,* 603 F.2d 1353, 1361 (9th Cir. 1979) (notice found sufficient where it informed class members of the subject matter of the litigation, terms of the proposed settlement and the proposed plan of allocation of the settlement proceeds).

## II. Legal Analysis

### A. Final Approval Is Appropriate Under 29 U.S.C. § 216(b) and Rule 23(e) Because the Settlement Is Fair, Adequate, Reasonable, and Not the Result of Collusion or Fraud Between the Parties.

Final approval is appropriate when there is a finding that the there is no fraud or collusion in arriving at the settlement and that the settlement is fair, adequate, and reasonable. *Cotton v. Hinton*, 559 F.2d 1326, 1330-31 (5th Cir. 1977); *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). There is a strong judicial policy in favor of settlement and compromise is the essence of settlement. *Bennett*, 737 F.2d at 986. Likewise, a court is to consider the general policy that "[p]articularly in class action suits, there is an overriding public interest in favor of settlement." *Cotton,* 559 F.2d at 1331. The determination that a settlement is fair is left to the sound discretion of the trial court and will not be overturned absent a clear showing of abuse of that discretion. *Bennett*, 737 F.2d at 986.

In evaluating the fairness of a settlement, the Court does not "decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 n.14 (1981). The Court should not, therefore, turn the final fairness hearing into a trial and reach any conclusions on the issues of fact and law that underlay the merits of the dispute. *See In re Fleet/Norstar Sec. Litig.,* 935 F. Supp. 99, 106 (D.R.I. 1996) ("In passing on a settlement agreement, it is not appropriate to adjudicate the merits of the dispute.").

Instead, the Eleventh Circuit suggests six factors be considered in determining whether a settlement is fair, adequate, and reasonable. *Id.* These factors are: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the

7

stage of proceedings at which the settlement was achieved. *Id*. When evaluated under the *Bennett* factors, this Court will find that the parties' settlement is fair, adequate, and reasonable.

### 1. The Likelihood of Success at Trial.

"As any experienced lawyer knows, a significant element of risk adheres to any litigation taken to binary adjudication." *In re Lupron Mktg. & Sales Prac. Litig.*, 228 F.R.D. 75, 97 (D. Mass. 2005). Absent this settlement guaranteeing a recovery, the class members could face significant obstacles and risk if this case were to proceed to dispositive motions, decertification proceedings (in a case that involved eleven (11) different Department Manager job titles), and -- for the parties and claims not otherwise dismissed by either -- jury trial. Similar retail store management misclassification cases have resulted in class/collective certification being denied or decertified,[3] dismissal on summary judgment,[4] or trial to a jury resulting in a defense verdict.[5] And even if Plaintiffs prevailed on liability, in addition to its defenses that any violation was not "willful" (as required for a third year of recovery period under the FLSA) and that it satisfies the "good faith" defense precluding an award of liquidated damages, Earth Fare contends that the appropriate method of calculating damages would be to divide weekly pay by all hours worked,

---

[3] *See, e.g., Cook v. Family Dollar Stores of Conn., Inc.,* 2013 WL 1406821 (Conn. Super. Ct. Mar. 18, 2013) (denying class certification of retail store manager wage and hour class action); *Johnson v. Big Lots*, 561 F. Supp. 2d 567 (E.D. La. 2008) (decertifying FLSA collective action of retail store managers).

[4] *See In re Family Dollar FLSA Litig.*, 637 F.3d 508 (4th Cir. 2011) (defendant obtained more than 60 summary judgments in a MDL proceeding in North Carolina of retail store manager wage and hour FLSA litigation); *see also Jackson v. Advanced Auto Parts, Inc.*, 362 F. Supp. 2d 1323, 1335 (N.D. Ga. 2005) (holding retail manager exempt, finding that training, counseling and disciplining other employees, and adjusting work schedules, demonstrated exercise of administrative discretion); *Kastor v. Sam's Wholesale Club*, 131 F. Supp. 2d 862, 865-66 (N.D. Tex. 2001) (granting summary judgment holding bakery manager exempt who spent 90% of time on baking, mixing, and similar manual production duties).

[5] *See, e.g., Perkins v. Southern New England Telephone Co Inc.,* No. 3:07-00967, Dkt No.578 (D. Conn. Oct. 24, 2011) (FLSA manager misclassification collective action resulting in defendant's verdict); *Henry v. Quicken Loans, Inc.*, 698 F.3d 897 (6th Cir. 2012) (affirming collective action defendant's verdict on FLSA claims); *Bell v. Citizens Fin. Group*, No. 2:10-cv-00320 (W.D. Pa.) (jury verdict for defendant on bank manager FLSA claims).

with all straight time having already been paid, thus paying only the remaining .5 of the regular rate for overtime hours (the "fluctuating workweek-type" calculation).[6]

In sum, members of the settlement classes face significant legal issues and uncertainty at trial. This factor strongly supports approval of settlement at this stage of litigation.

### 2.     The Settlement Falls Within A Favorable Range of Recovery.

The second and third *Bennett* factors, generally analyzed together, are the range of possible recovery and the point on or below the range at which a settlement is fair, adequate, and reasonable. *See Behrens v. Wometco Enter., Inc.*, 118 F.R.D. 534, 541 (S.D. Fla. 1988). The range of possible recovery "spans from a finding of non-liability through varying levels of injunctive relief." *Assoc. for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 468 (S.D. Fla. 2002). "The Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but to evaluate the proposed settlement in its totality." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298-1322-1323 (S.D. Fla. 2005). Moreover, "the existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable." *Id.*; *see*, *e.g.*, *Bennett*, 737 F.2d at 986; *Behrens*, 118 F.R.D. at 542 ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery").

This settlement resolves complex FLSA minimum wage and overtime claims and state law wage and hour claims for settlement class members who worked in the nine states in which

---

[6]     *See, e.g., Linscheid v. Natus Med. Inc.*, 2015 WL 1470122, at *13 (N.D. Ga. Mar. 30, 2015) (ruling on summary judgment in misclassification case based on facts particular to its holding that overtime damages in that case would be calculated by dividing salary by all hours worked to determine regular rate, with amount owed being only .5 times that rate for overtime hours worked); DOL Wage & Hour Opinion Letter, FLSA2009/3 (Jan. 14, 2009) (damages in misclassification cases calculated at fluctuating workweek-type half-time calculation, rather than default time-and-a-half calculation).

Earth Fare operated grocery stores prior to the October, 2012 reclassification. The settlement secured for the entire class the opportunity for each employee to claim their pro rata share (based on number of covered work weeks) of the total gross amount of $796,000.00 remaining from the $1.2 million Total Settlement Fund after payment of the 1/3 attorney's fees and costs, and the two $2,000 service payments. As of the date of this filing, 226 of the 436 putative class members (52%) claimed 57% of the total eligible weeks worked by all 436 putative class members. (Schwartz Decl. [Doc 44-2], ¶ 10) This results in an average settlement payment (again, net of all fees, costs, and service payments) of approximately $2,011 per participating claimant in this settlement – which is very comparable to the per-person average settlement amounts of $1,845 for a recent Rite Aid nationwide Assistant Store Manager and Co-Manager settlement.[7]

Thus, the settlement amount is fair, as it adequately compensates the class in light of potential risks and uncertainties.

        3.      The Complexity, Expense, and Duration of Litigation, and the Stage Of Proceedings At Which The Settlement Was Reached.

As for the fourth and sixth *Bennett* factors, the case was filed on February 7, 2014, after extensive research and investigation by Class Counsel.[8] After Plaintiffs filed motions for conditional certification of a Section 216(b) collective action and to strike affirmative defenses, the parties entered into a class-wide tolling agreement and engaged in full-scale efforts at resolving the case by settlement. (Head Decl. [Doc 44-1], ¶ 5; [Doc. 24]) Plaintiffs received and

---

[7]    *See Craig v. Rite Aid Corp.*, No. 4:08-cv-02317-JEJ [DE-572, p. 36] (M.D. Pa. 2012) (approved motion for final nationwide consolidated class-wide settlement approval for 7,342 class members who were Assistant Store Managers or Co-Managers at per-person average of $1,845 after all fees, costs, and service awards).
[8]    The docket reflects that eleven Department Managers from various store locations across multiple states filed Consents to join the case within the first month after it was filed.

reviewed complete pay-period-by-pay-period payroll records for the entire class, in addition to other documents and information from Earth Fare concerning Plaintiffs' claims and Earth Fare's defenses. (Head Decl. [Doc 44-1], ¶ 5)  The parties spent over a year negotiating settlement, including extensive negotiations regarding non-monetary terms and settlement notice and claim procedures, before finalizing the Settlement Agreement [Doc. 38-1] in July, 2015 – approximately a year and a half after it was filed. (Head Decl. [Doc 44-1], ¶ 5)

The fact that the case settled at an early stage in the proceedings could in some circumstances require heightened scrutiny in the settlement approval analysis.  Those circumstances do not apply where the parties' respective counsel have sufficient experience in litigating, evaluating, valuing, and resolving similar large-scale cases involving similar legal, technical, and procedural issues.  Here, the settlement was negotiated by counsel with extensive experience litigating – and resolving – similar large-scale FLSA retail manager misclassification cases.[9]  The experience and reputation of counsel is paramount.  *See*, *e.g.*, *Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977); *Fisher Brothers v. Phelps Dodge Industries, Inc.*, 604 F. Supp. 446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight.").

Accordingly, the parties' robust exchange of information and complete class-wide payroll data here, given the parties' counsel ability to take that information and hone in on the relevant issues in order to appropriately value the case based on their prior litigation

---

[9] *See, e.g., Caissie v. BJ's Wholesale Club*, No. 08–cv–30220 (D. Mass. June 24, 2010) (final approval of company-wide settlement of misclassification case for class of 2,800 retail/grocery store "mid-managers"; defendant represented by Earth Fare's counsel of record in this case); *Ott v. Publix Super Markets, Inc.*, No. 3:12–0486 (M.D. Tenn. Feb. 4, 2015) (final approval of company-wide settlement of case involving executive and administrative exemption defenses for 1,580 opt-in class and 15,000+ potential claimant class of grocery store Department Managers and Assistant Department Managers; plaintiffs represented by Plaintiffs' counsel of record in this case).

experiences in similar retail manager exemption cases, meets the standard of being part of "an aggressive effort" to litigate the case, from which counsel were fully well-equipped to evaluate the strengths and weaknesses in the case. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 185 (W.D.N.Y. 2005) (approving settlement of case "in relatively early stages of discovery" where parties had exchanged extensive information pertaining to the identities of class members and to Defendant's time and pay practices and where counsels' negotiations, while "cooperative," had "been in no way collusive").

The complexity of the litigation also weighs heavily in favor of final approval. The Supreme Court has noted that "FLSA claims typically involve complex mixed questions of fact and law." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728 (1981). This settlement involved claims under the FLSA and the wage and hour laws of all of the nine states in which Earth Fare operated grocery stores during the applicable recovery period. Adding to the complexity of litigating the federal and state overtime wage and hour laws, the case (and its settlement) involved complex procedural issues under the FLSA and Fed. R. Civ. P. 23. The complexity of both the case and its resolution is evidenced by the fact that it took many months after the initial in-person mediation to negotiate to final agreement the various and significant non-monetary terms that each side pursued – some of which were resolved by non-inclusion. *See, e.g., Lenahan v. Sears, Roebuck and Co.*, 2006 WL 2085282, *20 (D.N.J. July 24, 2006) (acknowledging that wage and hour laws are complex, and noting that the complexity of the settlement impacts the approval analysis).

Absent settlement, Plaintiffs would have to try to a jury a misclassification case involving 11 different Department Manager job titles, involving stores of varying sizes each with their own Store Managers and line of reporting, and would have to address complex legal issues such as

certification of opt-out class actions under nine different state laws consistent with certification of an opt-in collective action representative proceeding, willfulness and "good faith" defenses, multiple exemption defenses (administrative and executive), and damages disputes as referenced above.  The trial of this case would therefore be far more complex, given the multiple FLSA and state law exemptions raised as a defense to liability for eleven (11) different job titles and the nine (9) state law class claims in addition to the FLSA claims, than the eight-day trial at issue in *Morgan v. Family Dollar, Inc.*, 551 F.3d 1233 (11th Cir. 2008) which involved only one job title (Assistant Store Manager) with no state law class claims (FLSA only) and only one exemption defense at issue (executive exemption).  (Head Decl. [Doc 44-1], ¶ 6)  *See generally In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 318 (3d Cir. 1998) (settlement favored where "trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court").  This Settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner.   As noted, the final approval hearing comes a little over a year and a half after the case commenced, a substantial savings of time that warrants approval.

        4.        <u>The Substance And Amount Of Opposition To The Settlement</u>.

As to the fifth *Bennett* factor, lack of objections is a significant factor in determining whether the proposed class settlement is reasonable to the class as a whole. *Allapattah Servs. v. Exxon Corp.*, 2006 U.S. Dist. LEXIS 88829 (S.D. Fla. 2006); *see also Strougo v. Brazilian Equity Fund, Inc.*, 258 F.Supp. 2d 254, 258 (S.D. N.Y. 2003) (stressing that "[i]t has repeatedly been held that 'one indication of the fairness of a settlement is the lack of or small number of objections.'").

Again, there was no opposition to the settlement, whether by objections to any of its terms, or by any request for exclusion from settlement.[10] This factor, as with the other five *Bennett* factors, strongly supports final approval.

### B. Final Certification of the Settlement Classes is Appropriate.

Pursuant to the Settlement Agreement [Doc. 38-1], and in accordance with the model of other similar wage and hour misclassification cases that counsel have settled in the federal courts, the Parties stipulated, for settlement purposes only, to the following two classes:

> Federal Class (Opt-In Collective Action Under 29 U.S.C. § 216(b)): All individuals who have filed consents to join the Action (including without limitation all individuals who timely return a Claim Form containing a consent to join the Action) in any state in the United States and who worked for Earth Fare in any of the salary-paid Department Manager positions (including the Bakery Manager, Community Relations Coordinator, Food Service Assistant Manager, Food Service Manager, Front End Manager, Grocery Manager, Group Department Manager, Meat & Seafood Manager, Produce Manager, Specialty Manager, and Wellness Manager positions), that were classified and paid by Earth Fare as "exempt" from overtime laws (the "Covered Positions"), within the three years prior to filing their consent to join the Action or April 16, 2011, whichever date occurred earlier in time, and October 21, 2012.

> State Law Class (Opt-Out Class Under Fed. R. Civ. P. 23): All individuals employed in any of the Covered Positions for Earth Fare in Alabama, Florida, Georgia, Indiana, Kentucky, North Carolina, Ohio, South Carolina and Tennessee between February 7, 2011 and October 21, 2012.

The legal and factual arguments in support of certification of the Rule 23 State Law Class were set forth at length in the parties' joint motion for preliminary approval [Doc. 38], which the Court granted [Doc. 40], and therefore need not be repeated here. The parties jointly request that the Court enter a final approval order certifying the settlement classes as set forth in that joint approval motion, as specifically defined above.

---

[10] "[A]ny prospective class member who has received the class notice and failed to request exclusion from the class has judged retrospectively for himself that his interests have been adequately represented in the negotiation of the proposed settlement agreement." *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 824 (D. Mass. 1987).

14

**D.     The Requested Fees, Costs, And Service Payments Should Be Approved.**

Plaintiffs have moved for approval of 33 1/3% of the Total Settlement Fund for combined fees and costs, and service payments of $2,000 each to the two named Plaintiffs.  (Motion [Doc. 43]).  The amounts requested were expressly approved by the parties in the Settlement Agreement [Doc. 38-1], disclosed to the class members in the Court-approved Notice including disclosure of each class member's individualized amount they would receive from participating in the settlement after payment of such requested fees, costs, and service payments ([Doc. 38-1, Tab B; Head Decl. [Doc 44-1], ¶ 7; Schwartz Decl. [Doc 44-2], ¶ 6), and Earth Fare has no opposition to Plaintiffs' request for an award of those requested amounts.  Therefore, this Court should approve Plaintiffs' motion for an award of fees, costs, and service payments in the amounts requested in its Final Approval Order after the final fairness hearing.

### III.     Conclusion

For the foregoing reasons, the Parties respectfully request that this Court enter the Final Approval Order attached as Exhibit 1 hereto after completion of the final fairness hearing.

Respectfully submitted this 13th day of November, 2015,

| | |
|---|---|
| */s/ C. Andrew Head* | */s/ Jonathan W. Yarbrough* |
| C. Andrew Head | Jonathan W. Yarbrough |
| Georgia Bar No. 341472 | North Carolina State Bar No. 21316 |
| Jerilyn E. Gardner | (*Admitted Pro Hac Vice*) |
| Georgia Bar No. 139779 | Constangy, Brooks, Smith & Prophete, LLP |
| Attorneys for Plaintiffs | 84 Peachtree Road, Suite 230 |
| Head Law Firm, LLC | Asheville, NC  28803 |
| 1170 Howell Mill Rd., NW, Ste. 305 | Tel: (828) 277-5137 |
| Atlanta, GA 30318 | Email: jyarbrough@constangy.com |
| Tel: (404) 924-4151 | |
| Email: ahead@headlawfirm.com; | Alyssa K. Peters |
| jgardner@headlawfirm.com | Georgia Bar No. 455211 |
| | Attorneys for Defendant Earth Fare |
| | Constangy, Brooks, Smith & Prophete, LLP |
| | 577 Mulberry Street, Suite 710 |
| | P.O. Box 1975 |

Macon, GA 31202-1975
Tel: (478) 750-8600
Email: apeters@constangy.com

Christopher M. Pardo
Massachusetts Bar No. 674674
(*Admitted Pro Hac Vice*)
Constangy Brooks, Smith & Prophete LLP
535 Boylston Street, Suite 902
Boston, MA 02116
Tel:  (617) 849-7884
Email: cpardo@constangy.com